UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| Cloverdale Foods Company,<br><br>Plaintiff,<br><br>vs.<br><br>Seaboard Foods LLC,<br><br>Defendant. | Case No.<br><br><br><br>**COMPLAINT** |

Cloverdale Food Company ("Cloverdale"), for its cause of action against Seaboard Foods LLC ("Seaboard"), states and alleges the following:

## PARTIES

1. Cloverdale is a corporation organized under the laws of North Dakota with its principal place of business at 3015 34th Street NW, Mandan, North Dakota, 58554.

2. Upon information and belief, Seaboard is an Oklahoma limited liability company with its principal place of business at 9000 W 67th Street, Suite 200, Merriam, Kansas 66202.

3. Upon information and belief, Seaboard's sole member is Seaboard Corporation. Upon information and belief, Seaboard Corporation is organized under the laws of Delaware and has its principal place of business at 9000 W 67th Street, Suite 200, Merriam, Kansas 66202.

## JURISDICTION

4. This Court has subject matter jurisdiction over this dispute under 28 U.S.C. 1332(a). For purposes of diversity jurisdiction, Cloverdale is a citizen of North Dakota, and Seaboard is a citizen of Delaware, Kansas, and Oklahoma. Therefore, complete diversity between the parties exists. The amount sought under this complaint exceeds $75,000 exclusive of interest and costs.

5. This Court has specific personal jurisdiction over Seaboard. Under Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure, a federal district court sitting in diversity may exercise personal jurisdiction to the same extent as a court of the state in which the court sits. *Dean v. Olibas*, 129 F.3d 1001, 1003 (8th Cir. 1997). N.D. R. Civ. P. 4(b)(2) provides for personal jurisdiction, as Seaboard transacts business in the State of North Dakota.

6. Specifically, Seaboard purposefully directed its activities at North Dakota when it engaged with Cloverdale in North Dakota regarding Cloverdale's meat processing and co-packing services, entered into a "Co-Packing Agreement" with Cloverdale on February 24, 2022 (the "Co-Packing Agreement"), and thereafter conducted ongoing commercial activity within North Dakota under the Co-Packing Agreement. A true and correct copy of the Co-Packing Agreement is attached hereto as **Exhibit A** and incorporated by reference.

7. By soliciting a North Dakota company, entering into the Co-Packing Agreement, and conducting ongoing commercial activity within North Dakota, Seaboard has purposefully availed itself of the privilege of transacting business in North Dakota, and in doing so, invoked the benefits and protections of its laws. *See Bolinske v. Herd*, 2004 ND 217, ¶ 10, 689 N.W.2d 397. ("The phrase 'transacting any business in this state' should be given an expansive interpretation. Transacting business is used in a broader sense than merely doing

2

business. We recognize that operative facts vary in each case, but when a nonresident initiates contact, by telephone or other electronic medium, with a resident seeking a product or service, that action is generally sufficient to show the nonresident transacted business for purposes of establishing personal jurisdiction."). Specific personal jurisdiction over Seaboard would not offend traditional notions of justice, or fair play, or the due process of law. Accordingly, this Court's exercise of specific personal jurisdiction over Seaboard in this matter is proper.

## VENUE

8. Venue is proper in the District of North Dakota pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2). Under § 1391(b)(1), venue is proper because Seaboard is subject to this Court's specific personal jurisdiction and is therefore deemed to reside in this District for venue purposes. Venue is also proper under § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in the District of North Dakota, including the manufacture and delivery of the Products by Cloverdale at its facility located in this District, and Seaboard's acceptance of those Products at this location.

## FACTUAL ALLEGATIONS

9. Cloverdale is in the business of producing high-quality processed meats. In addition, Cloverdale offers processing and packing services to other commercial meat producers.

10. The contractual relationship giving rise to this dispute originated in 2021, when Seaboard, a Kansas entity, first initiated contact with Cloverdale to explore Cloverdale's co-packing services.

11. Cloverdale and Seaboard subsequently entered the Co-Packing Agreement in 2022. This action arises out of Seaboard's breach of the Co-Packing Agreement.

12. Under the Co-Packing Agreement, Seaboard supplied Cloverdale with raw pork bellies and certain other ingredients and materials, including but not limited to spices, labels, and packaging (the "Supplied Materials"), which Cloverdale would then produce into varieties of smoked bacon at Cloverdale's facility in Mandan, North Dakota. *See* Co-Packing Agreement § 1.4; Recitals. According to §1.1, the "Product Guidelines" include the "Specifications" attached to the Co-Packing Agreement as Exhibit C. The Specifications for each variety of bacon the parties agree to co-pack together are contained within a product specification sheet. Under the Co-Packing Agreement, Cloverdale and Seaboard agreed to add hickory smoked bacon (the "Hickory Smoked Bacon") as a "Product" and a "Product Specification Sheet" dated May 6, 2024 for the Hickory Smoked Bacon was made part of the parties' Co-Packing Agreement. A true and correct copy of the Product Specification Sheet for the Hickory Smoked Bacon is attached hereto as **Exhibit B** and incorporated by reference. Although the Co-Packing Agreement was never formally amended, the parties' conduct and course of dealing indicate a mutual understanding that additional bacon varieties, including Hickory Smoked Bacon, would be supplied, along with hot honey bacon and spicy maple bacon (collectively referred to as the "Products").

13. Once Cloverdale finished processing and packaging the Products, Seaboard would accept delivery of the Products from Cloverdale's Mandan facility. Title to the Products and all risk of loss with respect to the Products passed to Seaboard at the time the Products were loaded onto trucks contracted by Seaboard. Seaboard then transported the Products and distributed them to its customers. *See* Co-Packing Agreement § 5.2.

14. Each time Cloverdale delivered the Products to Seaboard, Seaboard was to pay Cloverdale the previously-agreed purchase price. *See* Co-Packing Agreement §§ 2.1; 2.2.

15. Seaboard is required to indemnify, defend and hold harmless Cloverdale from and against all allegations, liabilities, damages, costs, expenses and losses, or threat thereof, based upon or arising out of any breaches by Seaboard of the Co-Packing Agreement.

16. The Co-Packing Agreement provides that the non-prevailing party in any action arising out of or relating to the Co-Packing Agreement shall pay to the prevailing party the costs and expenses incurred by the prevailing party in connection with the action, including accountants' fees and reasonable attorneys' fees. *See* Co-Packing Agreement § 22.

17. The dispute centers on packages of Hickory Smoked Bacon and the Supplied Materials.

18. Seaboard accepted delivery from Cloverdale of Hickory Smoked Bacon installments from certain production runs ranging from July 26, 2024 through August 8, 2024.

19. Once Cloverdale loaded the Hickory Smoked Bacon onto trucks hired by Seaboard at Cloverdale's facility, Seaboard was responsible for ensuring that nothing happened to it to cause it to become unacceptable. *See* Co-Packing Agreement § 5.2.

20. Seaboard thereafter notified Cloverdale its customer Sam's Club had rejected installments of the Hickory Smoked Bacon from the production runs dated July 26, 2024, and August 8, 2024, alleging the Hickory Smoked Bacon from those production runs failed to conform to the 90-day shelf-life "Specification" contained in the Co-Packing Agreement.

21. The specific Hickory Smoked Bacon purportedly rejected by Sam's Club conformed to the requirements of the Co-Packing Agreement when it left Cloverdale's facility. To the extent the Hickory Smoked Bacon rejected by Sam's Club was non-conforming, which Cloverdale denies, Seaboard has failed to provide any reliable evidence or documentation demonstrating that any such non-conformity of the Hickory Smoked Bacon from the July 26,

2024 through August 8, 2024 production runs was attributable to Cloverdale's performance under the Agreement.

22. In fact, subsequent analysis of Seaboard's cold-chain – its temperature-controlled distribution system used to preserve and transport the perishable Hickory Smoked Bacon – revealed significant temperature fluctuations and handling failures, indicating that spoilage of the Hickory Smoked Bacon may have been the result of improper cold-chain practices employed by Seaboard or its own contractors. When the Hickory Smoked Bacon, containing lactic acid bacteria, is subjected to temperature shock, it creates conditions conducive to accelerated spoilage.

23. Additionally, third-party testing ordered by Cloverdale indicates the pork bellies furnished by Seaboard (which were a Supplied Material with respect to the Hickory Smoked Bacon pursuant to the Co-Packing Agreement) routinely contained lactic acid bacteria, and in some instances, high counts thereof. The testing data from the pork bellies suggests that, to the extent the specific Hickory Smoked Bacon purportedly rejected by Sam's Club is non-conforming with the requirements of the Co-Packing Agreement's 90-day shelf-life Specification, Seaboard's provision of unacceptable pork bellies may have been a source of the problem.

24. Pursuant to the Co-Packing Agreement, Seaboard is responsible for all defective Hickory Smoked Bacon to the extent the unacceptability results from Seaboard's negligence in handling. *See* Co-Packing Agreement § 4.11. Also, Seaboard is responsible for all defective Hickory Smoked Bacon to the extent the unacceptability results from Seaboard's furnishing of pork bellies to Cloverdale:

> **4.11** Notwithstanding any other provision contained in this Agreement, Supplier shall not be responsible for any defective, recalled or rejected Products to the extent that the unacceptability of such Products results from Company's negligence or willful misconduct in handling the Products, in furnishing Supplied Materials to Supplier or from defective or from errors or defects in the Specifications themselves when Supplier has fully complied therewith.

*See* Co-Packing Agreement § 4.11.

25. After Sam's Club purportedly rejected Seaboard's delivery of the Hickory Smoked Bacon, Seaboard unjustifiably refused all remaining shipments of the Products that it had solicited Cloverdale to produce. This included installments already produced, those in progress, and all future agreed-upon installments of the Products under the Co-Packing Agreement.

26. Cloverdale properly performed its obligations under the Co-Packing Agreement with respect to the Products. Even if the specific run[s] of Hickory Smoked Bacon purportedly rejected by Sam's Club were non-conforming with the 90-day shelf-life Specification, which Cloverdale denies, Seaboard was not entitled to reject completely different, later production runs based on earlier, non-conforming runs. *See* Co-Packing Agreement § 4.3. Instead, if samples from a particular production run of Hickory Smoked Bacon do not conform to the requirements of the Co-Packing Agreement, Seaboard may only reject Hickory Smoked Bacon produced and packaged during that particular run; it may not reject all Product in different runs based on the failure of samples from a single run to conform:

  4.3 In addition to all other rights and remedies available to the Company under applicable law, rule or regulation and this Agreement, Products delivered to the Company by Supplier which fail to meet the Product Guidelines, or otherwise fail to comply with the terms and conditions of this Agreement, may be rejected by the Company. Additionally, but not by way of limitation, it is agreed that:

  (a) The Company may reject Products which have been produced and packaged during a particular production run if samples from that production run do not conform to the Product Guidelines, or are otherwise not in compliance with the terms and conditions of this Agreement.

  (b) Products which have been damaged by Supplier during storage, handling, shipment or delivery may be rejected by the Company.

  (c) If the Company receives notification directly from a customer that it is rejecting Products, the Company shall be deemed to have rejected such Products. The Company shall promptly notify Supplier of such a rejection by its customer.

*See* Co-Packing Agreement § 4.3.

  27. Samples from later production runs show that the Product from those runs conformed to the Product Guidelines and was otherwise in compliance with the terms and conditions of the Co-Packing Agreement. Seaboard was not entitled to reject Product from different runs simply because Sam's Club purportedly rejected Hickory Smoked Bacon from particular runs. Instead, Seaboard may only reject Hickory Smoked Bacon from those runs that fail to conform to the Product Guidelines or are otherwise not in compliance with the Co-Packing Agreement. *See* Co-Packing Agreement § 4.3.

  28. Seaboard returned the Hickory Smoked Bacon in its possession, cancelled orders it had made for Products that had already been produced by Cloverdale but not yet delivered into Seaboard's control, and instructed Cloverdale Seaboard would not accept any Products Cloverdale planned to produce using Supplied Materials Seaboard had provided.

29.     Seaboard wrongfully terminated the Agreement, without providing Cloverdale the required written notice or the ability to cure any alleged violation of the Agreement. *See* Co-Packing Agreement §§ 7.2-7.4.

30.     After Seaboard wrongfully rejected the Product and wrongfully terminated the Co-Packing Agreement, Cloverdale sought to return certain Supplied Materials and Products to Seaboard and requested reimbursement for costs it is entitled to receive from Seaboard under the Agreement. *See* Agreement § 1.4, *supra*. Seaboard refused to accept the return of the Supplied Materials and Products and refused to reimburse Cloverdale for the costs Cloverdale has incurred due to Seaboard's wrongful actions under the Co-Packing Agreement.

31.     Cloverdale is entitled to recover damages flowing from Seaboard's above-referenced breaches of the Co-Packing Agreement, in an amount to be proven by proven by Cloverdale at trial, in excess of $75,000.

## **CAUSE OF ACTION**

## **BREACH OF CONTRACT**

32.     Cloverdale incorporates the preceding paragraphs as fully set forth herein.

33.     The Co-Packing Agreement is a valid and enforceable contract supported by consideration.

34.     Cloverdale performed all of its obligations under the Agreement.

35.     Seaboard breached the Co-Packing Agreement as set forth above.

36.     Cloverdale has suffered monetary damages as a direct result of Seaboard's breaches of the Co-Packing Agreement.

37. Seaboard is contractually required to indemnify Cloverdale from all of Cloverdale's damages, costs, expenses and losses arising out of Seaboard's breaches, including but not limited to its reasonable attorneys' fees and court costs.

38. Cloverdale is contractually entitled to recover from Seaboard Cloverdale's costs and expenses incurred in connection with this action, including but not limited to its reasonable accountants' fees, attorneys' fees, and court costs, as well as those incurred by Cloverdale in the prior lawsuit initiated by Seaboard in the U.S. District Court for the District of Kansas.

## **PRAYER FOR RELIEF**

39. WHEREFORE, Cloverdale respectfully requests that this Court enter judgment in its favor against Seaboard as follows:

   A. For damages in amount to be proven at trial exceeding $75,000.

   B. For pre- and post-judgment interest as allowed by law;

   C. For costs and expenses, including but not limited to attorneys' fees and costs, as permitted under the Co-Packing Agreement and as allowed by law; and

   D. For such other and further relief as the Court deems just, equitable, and proper.

## **JURY DEMAND**

40. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Cloverdale hereby demands a trial by jury on all issues so triable.

Dated this 5th day of February, 2026

                            **VOGEL LAW FIRM**

                            */s/ Robert J. Pathroff*
BY:  Robert J. Pathroff (#07759)
       Laura R. Helgeson (#09804)
       US Bank Building
       200 North 3rd Street, Suite 201
       PO Box 2097
       Bismarck, ND  58502-2097
       Telephone:  701.258.7899
       Email:   rpathroff@vogellaw.com
                    lhelgeson@vogellaw.com
       ATTORNEYS FOR PLAINTIFF
       CLOVERDALE FOODS COMPANY